## Cranswick, Deborah

**From:** Lewandowski, Jill

**Sent:** Tuesday, May 08, 2007 8:35 AM

**To:** Crayton, Wayne; Cranswick, Deborah; Sloan, Pete; Banet, Susan; Denton, Jeffrey W; Dellagiarino, George; Zinzer, David

**Cc:** Cowles, Cleveland; Bennett, James F; Wilson, Judy

**Subject:** RE: FEEDBACK NEEDED: Brief Recap of the 120 dB telcon

**Attachments:** L07-13letter.doc

Wayne,

Thanks for the summary. I think it is always helpful to send these out so that issues can be clarified, etc.

Regarding bullet #2, I do not think we should remove any and all stips related to marine mammals from our permits and simply refer to the IHA for marine mammal requirements. As an example, the GOMR permits include requirements for permittees to abide by standard marine mammals stipulations detailed out in several NTLs. Since the AKR does not have NTLs outlining these measures, the next approach would be to list these measures directly in the MMS permits as was done in 2006. In addition, last year and this year we have agreed upon a selected alternative with NMFS that includes a suite of mitigation and monitoring requirements. These requirements are the basis for the FONSI and therefore should be reinforced by both agencies.

The Seismic Team will be providing recommendations to OMM management on this issue, and these recommendations are due out in late summer. Management's decisions based on these recommendations can then guide what we do for 2008 and beyond. For 2007, I am suggesting that MMS continue to include those measures in any issued permits.

Regarding bullet #4, I just want to clarify that any discussions with Ken on a preferred alternative for the seismic DEIS are preliminary and confidential. Also, his reason for suggesting alternative #8 is not because the 120 dB is controversial but because this is the alternative with the greatest opportunity for an adaptive management approach based on the amount of activity each year. There is still a great deal of discussion between MMS and NMFS to determine if this will even be the approach.

Thanks,
Jill

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Jill Lewandowski
Protected Species Biologist
Minerals Management Service
Environmental Assessment Branch
381 Elden Street
Herndon, VA 20170
(703) 787-1703
fax (703) 787-1026
Jill.Lewandowski@mms.gov
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**From:** Crayton, Wayne
**Sent:** Thursday, May 03, 2007 7:01 PM
**To:** Cranswick, Deborah; Sloan, Pete; Banet, Susan; Denton, Jeffrey W; Lewandowski, Jill; Dellagiarino, George; Zinzer, David
**Cc:** Cowles, Cleveland
**Subject:** FEEDBACK NEEDED: Brief Recap of the 120 dB telcon

---

Telcon Topic: Discuss implications of the CPAI/NMFS 120 dB lawsuit results

Date and Time: Monday, April 30 at 9am (Alaska Time)/1pm (Eastern Time)

Attendees: MMS Alaska (Wayne Crayton - EAS, Jeff Denton - EAS, Debbie Cranswick - EAS, Pete Sloan - RE, Sue Banet - RE); MMS Headquarters-RED (David Zinzer, George Dellagiarino. Jill Lewandowski)

Discussion Topics:

**(1) Will our 2007 G&G permits now mirror what was issued in 2006?**
**(2) Will NMFS require the 120 dB-related mitigation in its IHAs?**
**(3) Will MMS defer all T&E marine mammal mitigation measures to NMFS?**
**(4) Will MMS independently reevaluate the "science" behind the 120 dB issue and possibly change its position on the matter?**

****************************************************************************************************************

Thanks for attending and participating in the subject telcon. I believe I accomplished my primary objective of initiating discussions for the purposes of bringing closure within our agency on the controversial 120 dB topic. A great deal was discussed/debated and I'll attempt to summarize the major points in bullet form. Please carefully review what I have prepared and add your own comments/observations and more importantly, any corrections.

- The court's decision not issue a decision on ConocoPhillips appeal of the 120 db *et al* issues left MMS-Alaska staff in limbo about how to proceed with mitigation measures in its G&G permits and NEPA documents (e.g. Chukchi 193 FEIS, Seismic Survey FPEIS). The two aforementioned NEPA documents likely have text referencing ConocoPhillips' appeal so that text will need to be reviewed and likely edited/updated.
- Pete stated that all future G&G seismic survey permits issues out of the Anchorage office will not list stipulations that are intended to be a part of IHAs issued by the NMFS or FWS. The G&G permits will defer to the NMFS and FWS IHA stipulations. If no IHA will be applied for, then MMS will put in its own stipulations to protect marine mammals. ESA and other NEPA-related stipulations would be appropriately listed in the G&G permits. There were no objections to what Pete said so I am assuming that what he is suggesting will in fact be OK with MMS Management/Decision-makers.
- There appeared to be a consensus that bowhead whales will/may "react" to seismic survey-generated sound at the 120 dB level. Jill mentioned that a professional paper [the title and author(s) were not identified] prepared by an "expert panel" will be issued soon which reinforces this consensus. However, there was not a consensus on what the "reactions" meant biologically. An opinion expressed was that the "reaction(s)" could be extrapolated to having a significant impact (i.e. affect reproductive and feeding behavior) on bowhead cow/calf pairs and gray whales - - this opinion/assumption was used in the 2006 PEA and in the 2007 Seismic Survey DPEIS. Another opinion expressed was that the "science" behind this extrapolation was faulty or non-existent because the bowhead population has been growing about 3% per year; therefore, implementing a 120 dB protective zone is not necessary.
- Recognizing the controversy of the 120 dB issues within MMS, Jill mentioned that Ken Hollingshead (NMFS) was looking to develop an alternative (for the 2007 Seismic Survey DPEIS) that will include the 180/190 dB exclusion zone, the 160 dB safety zone (with special conditions), and no 120 dB

requirement. The criteria for not using the 120 dB would be developed by NMFS.

- There was discussion about the scientific integrity about the bowhead whale significance criteria. At this point, MMS will not be changing the significance criteria and there was reason expressed which questioned the wisdom to even have NEPA-related significance thresholds for ESA species. Debbie told the attendees that this topic is under discussion relative to the Liberty DPP/EIA.

Based on our discussions, here's how I would answer these questions....

**(1) Will our 2007 G&G permits now mirror what was issued in 2006?**
Not entirely. Other than what we ordinarily put in our permits to cover marine mammal issues, our permits will defer more specific MMPA-related stipulations to those listed in NMFS and/or FWS-generated IHA or LOAs. G&G permits will continue to include mitigation measures, as identified through the NEPA process.

**(2) Will NMFS require the 120 dB-related mitigation in its IHAs?**
It depends. Currently, NMFS is working on a mitigation-scenario which will narrow down the criteria for requiring a bowhead whale 120dB safety/exclusion/monitoring zone.

**(3) Will MMS defer all T&E marine mammal mitigation measures to NMFS?**
Through the Section 7 consultation process, MMS will work with NMFS to identify appropriate T&E marine mammal mitigation measures...some measures will appear as stipulations in IHAs and others may appear as stipulations in exploration plans and/or development and production plans.

**(4) Will MMS independently reevaluate the "science" behind the 120 dB issue and possibly change its position on the matter?**
There is agreement that bowhead whales react to seismic survey-generated 120 dB sounds. There is not an agreement to the biological significance of the reaction. Despite this disagreement, MMS will not (at this time) conduct an internal reevaluation of the 120dB's biological significance and need to implement related mitigation measures?

Let's keep the dialog going...have I accurately summarized the issues? If not, please chime in from your perspective. The bottom-line is that I want to answer the 4 questions once and for all so we can move on beyond them. Are there other questions on this topic that should be asked and answered?

Thanks much,

Wayne

U.S. Department of the Interior
Mineral Management Service
Alaska OCS Region
3801 Centerpoint Drive #500
Anchorage, AK 99503-5820
(w) 907-334-5241
(fax) 907-344-5242
www.mms.gov/alaska

In Reply Refer To: MS 5123 May 3, 2007

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

PGS Marine Geophysical
Attention: Mr. David Lippett
15150 memorial Drive
Houston, Texas 77079

Dear Mr. Lippett:

Your application dated April 4, 2007 requests a Federal permit to conduct geophysical operations on certain Outer Continental Shelf (OCS) lands in the Ship Shoal, Ewing Bank, and Green Canyon area, as shown on the map accompanying the application. Reservoir Exploration Technology will conduct the operations for PGS Multi Klient Invest AS using the vessels M/V Beulah Chouest and M/V Bourbon. Operations are proposed to commence on or after May 7, 2007 and will be completed on or before March 28, 2008. The proposed program is a seismic ocean bottom cable (obc) marine seismic survey utilizing a dual source 4070 cubic-inch air gun array as an energy source.

A permit designated OCS Permit L07-13, is hereby granted to conduct geophysical exploration operations on the OCS in the area and manner described in the application subject to the enclosed Permit for Geophysical Exploration for Mineral Resources in the OCS and the enclosed Stipulations.

This permit shall be effective from the May 7, 2007 until July 7, 2007 or the completion of the programmed survey, whichever occurs early. All modification requests to this permit need to be submitted in writing at least two weeks prior to the requested changes. Any change(s) to the permitted operations under this permit will require written approval from the Regional Supervisor, Resource Evaluation, prior to the initiation of such modifications. This applies to all requests for time extensions beyond the allowed initial 60-day period. Upon written request, the permit can be extended beyond the time permitted for an additional 60 days, up to a maximum total of five extensions. Please be advised that the office requests *bimonthly reports* of operations and a map showing the progress on the acquisition. In addition, we will require a completion report as prescribed in the Section III B of this permit within 30 days following cessation of field operations. Also, it should be noted that navigation data for the survey and, preferably a CD containing the shape file, will be required as part of the completion report.

The mitigations contained in the following paragraphs should be evaluated before initiating operations and strictly adhered to during operations.

Our National Environmental Policy Act (NEPA) review of the subject action is complete and results in a Finding of No Significant Impact (FONSI). This FONSI is conditioned on the imposition of the following mitigation measures to ensure environmental protection, consistent environmental policy, and safety as required by NEPA, as amended. This FONSI is valid only insofar as the following conditions are imposed:

**Mitigations**

1 RAMP-UP, VISUAL MONITORING, TRAINING, VISUAL MONITORING METHODS, REPORTING, BOREHOLE SEISMIC SURVEYS, AND EXPERIMENTAL PASSIVE ACOUSTIC MONITORING. You will comply with NTL 2007-G02 Implementation of Seismic Survey Mitigation Measures and Protected Species Observer Program. It can be accessed on the web at http://www.gomr.mms.gov/homepg/regulate/regs/ntls/2007NTLs/07-g02.pdf.

2 VESSEL STRIKE AVOIDANCE AND INJURED/DEAD PROTECTED SPECIES REPORTING. You will comply with NTL 2007-G04. It can be accessed on the web at http://www.gomr.mms.gov/homepg/regulate/regs/ntls/2007NTLs/07-g04.pdf.

3 ARCHAEOLOGICAL RESOURCES If the permittee discovers any archaeological resource (shipwreck/prehistoric site) while conducting activities, the PGS Multi Klient Invest AS will report the discovery immediately to the Regional Supervisor of Leasing and Environment (RSLE) at the MMS. The PGS Multi Klient Invest AS will make every reasonable effort to avoid disturbance to the archaeological resource until the RSLE informs the company as to what precautions must be taken to protect the resource from operational activities.

4 BIOLOGICALLY SENSITIVE RESOURCES. Due to the extensive coverage of this survey, the permittee is advised to avoid disturbing biologically sensitive areas as described in NTL No. 2004-G05. It can be accessed on the web at http://www.gomr.mms.gov/homepg/regulate/regs/ntlltl.html.

If you have any questions, please call Mr. Ron Brinkman at (504) 736-2720 or Harshad Patel at (504) 736-5712.

Sincerely,

David A. Marin
Regional Supervisor
Gulf of Mexico Region
Office of Resource Evaluation

Enclosures

bcc: File: Permit L07-13 (MS 5123)
Ron Brinkman (MS 5123)
Harshad Patel (MS 5123)
Reading File (MS 5100); Reading File (MS 5120)

Author:Spilmann:Date:File Path