United States Department of the Interior
U.S. FISH AND WILDLIFE SERVICE
Fairbanks Fish and Wildlife Field Office
101 12th Avenue, Room 110
Fairbanks, Alaska 99701
January 13, 2005

Memorandum

To: Henri Bisson, Alaska State Director - Bureau of Land Management

From: Steve Lewis, Field Supervisor - U.S. Fish and Wildlife Service, Fairbanks Fish and Wildlife Field Office

Subject: Endangered Species Act, Section 7 Biological Opinion for the proposed Amendment to the Northeast National Petroleum Reserve-Alaska Integrated Activity Plan / Environmental Impact Statement

This document transmits the U.S. Fish and Wildlife Service's (Service's) final biological opinion (BO) based on our review of the Bureau of Land Management's (BLM's) biological assessment covering the proposed Amendment to the Integrated Activity Plan/Environmental Impact Statement (IAP/EIS) for the Northeast National Petroleum Reserve-Alaska (NE NPR-A), and its effects on Steller's eiders (*Polysticta stelleri*) and spectacled eiders (*Somateria fischeri*) in accordance with section 7 of the Endangered Species Act of 1973 (Act), as amended (16 U.S.C. 1531 et seq.). The NE NPR-A IAP/EIS Amendment (Amended IAP/EIS) states that it supersedes the 1998 NPR-A IAP/EIS and is now the sole National Environmental Policy Act (NEPA) analysis for the NE NPR-A Planning Area (NE Planning Area). BLM's June 3, 2004, letter requesting formal consultation for the proposed action was received on June 7, 2004. On July 8, 2004, the Service sent a letter to the BLM stating that, if no major revisions were to be made to the Amended Draft IAP/EIS and the Draft Biological Assessment (Draft BA), all information required to initiate formal consultation had been received or was otherwise accessible for our consideration and reference. On December 24, 2004, the Service received BLM's final BA (BA). As stated in the BA, BLM expects oil and gas leases under its Amended IAP/EIS's Preferred Alternative to have a life of ~10 years. Oil field production infrastructure resulting from leasing is expected to operate at least 30 years. If significant new information becomes available that is not described in the Amended IAP/EIS or the NE NPR-A Biological Assessment (BA), BLM should reinitiate formal consultation with the Service.

The NE Planning Area is within the breeding ranges of spectacled eiders and Alaska-breeding Steller's eiders, both listed as threatened under the Act. We are particularly

concerned with the proposed action because the NE Planning Area contains important breeding habitat for over 15% of spectacled eiders on the Arctic Coastal Plain (ACP) and the species occurs/nests at comparatively high densities within the identified "Area of High Geologic Potential" (Figures 1 and 3). Across the NE Planning Area, we have found that spectacled eiders and Steller's eiders are unevenly distributed. Spectacled eiders are more abundant and more widely distributed than Steller's eiders across the NE Planning Area (Figure 2).

Based on the information provided on the proposed and potential activities, and the information currently available on listed and proposed species and designated and proposed critical habitat, the Service has determined that it is unlikely that the action will violate section 7(a)(2) of the Act. Section 7(a)(2) of the Act states that Federal agencies must ensure that their activities are not likely to: 1) jeopardize the continued existence of any listed species, or 2) result in the destruction or adverse modification of designated critical habitat. We arrived at this "non-jeopardy" determination based on the impacts outlined in the Effects of the Action and Conclusion sections and on BLM's commitment to consult with respect to all aspects of future oil development, production and field abandonment.

The Incidental Take Statement for this non-jeopardy opinion includes reasonable and prudent measures and terms and conditions which, upon finalization of this draft, become mandatory for the BLM to implement. These reasonable and prudent measures and implementing terms and conditions address take from habitat loss and migrants colliding with oil field structures within the NE Planning Area.

Despite this "no jeopardy" determination, the Service stresses that given the large amount of uncertainty described within the BA surrounding where development will occur subsequent to leasing, how that development will be managed (Administrative Officer discretion over application of stipulations and ROPs), and how Steller's and spectacled eiders will be affected by development/production, it is difficult to evaluate potential impacts from oil development to these two species. However, the potential for significant impacts is highest in/adjacent to the northeast portion of the NE Planning Area, because we believe a significant number of North Slope-breeding spectacled eiders nest within this area (Figure 4). If substantial development, beyond the levels identified in the BA, occurs within/adjacent to areas of high concentration for this species, the potential for significant impacts is high. If development is ultimately authorized in/adjacent to these areas, diligent management will likely be required to protect this threatened species (Area of High Geologic Potential overlaps or is adjacent to areas of comparatively high-density nesting and brood-rearing areas for spectacled eiders listed above). Because the effects of development on spectacled and Steller's eiders are inadequately studied and poorly understood, we believe that the only certain way to avoid significant impacts is to exclude development from high-density nesting areas.

Over the last several months the Service and BLM have worked closely together in reviewing and revising the attached document. We look forward to working collaboratively with the BLM staff in implementing the terms and conditions of the BO. A complete administrative record of this consultation is on file at the Fairbanks Fish and Wildlife Field Office, 101 12th Ave., Room 110, Fairbanks, Alaska 99701. A chronology

of the consultation history is provided in Appendix 1. If you have any comments or concerns regarding this BO, please have your staff contact Ted Swem, Endangered Species Biologist, Fairbanks Fish and Wildlife Field Office at 907/456-0441.

Attachment

**FINAL BIOLOGICAL OPINION (01-12-2005)**

INTRODUCTION

This document transmits the U.S. Fish and Wildlife Service's (Service's) final biological opinion (BO) based on our review of the Bureau of Land Management's (BLM's) biological assessment covering the proposed Amendment to the Integrated Activity Plan/Environmental Impact Statement (IAP/EIS) for the Northeast National Petroleum Reserve-Alaska (NE NPR-A), and its effects on Steller's eiders (*Polysticta stelleri*) and spectacled eiders (*Somateria fischeri*) in accordance with section 7 of the Endangered Species Act of 1973 (Act), as amended (16 U.S.C. 1531 et seq.). The NE NPR-A IAP/EIS Amendment (Amended IAP/EIS) states that it supersedes the 1998 NPR-A IAP/EIS and is now the sole National Environmental Policy Act (NEPA) analysis for the NE NPR-A Planning Area (NE Planning Area). BLM's June 3, 2004, letter requesting formal consultation for the proposed action was received on June 7, 2004. On July 8, 2004, the Service sent a letter to the BLM stating that, if no major revisions were to be made to the Amended Draft IAP/EIS and the Draft Biological Assessment (Draft BA), all information required to initiate formal consultation had been received or was otherwise accessible for our consideration and reference. On December 24, 2004, the Service received BLM's final BA (BA). As stated in the BA, BLM expects oil and gas leases under its Amended IAP/EIS's Preferred Alternative to have a life of ~10 years. Oil field production infrastructure resulting from leasing is expected to operate at least 30 years. If significant new information becomes available that is not described in the Amended IAP/EIS or the NE NPR-A Biological Assessment (BA), BLM should reinitiate formal consultation with the Service.

BLM drafted the Amended IAP/EIS to determine the appropriate multiple-use management of 4.6 million acres of the NE Planning Area, consistent with existing statutory direction for its management. The NE Planning Area is within the breeding ranges of spectacled and Alaska-breeding Steller's eiders, both listed as threatened under the Act. We are particularly concerned with the proposed action because the NE Planning Area contains important breeding habitat for over 15% of spectacled eiders on the Arctic Coastal Plain (ACP) and the species occurs/nests at comparatively high densities within the identified "Area of High Geologic Potential" (Figures 1 and 3). Across the NE Planning Area, we have found that spectacled eiders and Steller's eiders are unevenly distributed. Both species show a general gradient in density from high in the Northern and Western portions of the NE Planning Area to low in the Southern and Southeastern portions. Spectacled eiders are more abundant and more widely distributed than Steller's eiders across the NE Planning Area (Figure 2).

The Amended IAP/EIS addresses the full range of BLM's management responsibilities in the NE Planning Area, with the potential use of the area for oil and gas development as a major focus. The management plan includes various current and future surface-impacting activities that may affect the threatened spectacled and Steller's eiders such as aircraft use, hazardous- and solid-material removal and remediation, overland moves, seismic activities, and oil leasing/exploration and development/production activities. Such activities, particularly oil development, temporary camps, and aircraft traffic may result in disturbance, altered habitat,

and spills of oil or other contaminants. These could adversely affect the behavior, distribution, and abundance of listed eiders in or adjacent to the NE Planning Area.

For long-term, multistaged activities for which agency actions occur in discrete steps, such as leasing large tracts of Federal land for mineral exploration, the Service must evaluate not only the proposed action, but also the potential resulting actions in order to determine the likelihood of the entire action violating section 7(a)(2) of the Act. Consulting on actions such as those described by the BA's Preferred Alternative is challenging in that the Preferred Alternative does not describe defined actions, but only contains the design standards that would be used to develop future actions. The Preferred Alternative also contains temporal and spatial uncertainty regarding future actions, resulting in corresponding uncertainty regarding potential impacts to listed eiders. Therefore, while developing the effects analysis and associated Incidental Take Statement (ITS) for this BO, we have provided the benefit of the doubt to the species by assuming the maximum potential conflict between activities that could reasonably occur under the BLM's Preferred Alternative.

This BO is based on information provided in BLM's December 24, 2004, BA to evaluate the effects of proposed oil leasing, exploration, development, production and abandonment actions under the BA's Preferred Alternative, and on other information available to the Service. The following document represents the Service's BO on the effects of the proposed action on the threatened spectacled eider (*Somateria fischeri*) and Steller's eider (*Polysticta stelleri*), in accordance with section 7 of the Act. Based on the information provided on the proposed and potential activities, and the information currently available on listed and proposed species and designated and proposed critical habitat, the Service has determined that it is unlikely that the action will violate section 7(a)(2) of the Act. Section 7(a)(2) of the Act states that Federal agencies must ensure that their activities are not likely to: 1) jeopardize the continued existence of any listed species, or 2) result in the destruction or adverse modification of designated critical habitat. To arrive at this "non-jeopardy" determination, we used a five-step approach for applying the section 7(a)(2) standards. The steps are as follows:

1. Define the biological requirements and current status of each listed eider species,
2. Evaluate the relevance of the environmental baseline to the species' current status,
3. Determine the effects of the proposed or continuing action on listed species,
4. Determine whether the species can be expected to survive with an adequate potential for recovery under the effects of the proposed or continuing action, the effects of the environmental baseline, and any cumulative effects, and considering measures for survival and recovery specific to other life stages, and
5. Identify reasonable and prudent alternatives (RPAs) to a proposed or continuing action when that action is likely to jeopardize the continued existence of a listed species. Thus, this step is relevant only when the conclusion of the previously described analysis for Step 4, above, is that the proposed action would jeopardize listed species. The RPAs would have to reduce the impacts associated with the proposed action to a level that does not jeopardize the species. Note that this step

is not included in the BO because the conclusion of this BO is that the proposed action will not jeopardize the continued existence of any listed species.

The BA and other documents provided to the Service include two important categories of information intended to clarify potential actions under the Amended IAP/EIS. Prior to leasing and exploration, it is difficult to predict exactly how much and where oil and gas development will occur. Therefore, to form a basis for predicting impacts to spectacled and Steller's eiders, BLM provided a "reasonable and foreseeable oil development scenario" that describes the location and extent of development expected by BLM in the NE Planning Area. Additionally, BLM further defined potential actions outlined in the BA through a set of explicit "assumptions" upon which impact evaluation could be based. One example is the assumption that all of the projected development would occur in the Area of High Geologic Potential (Figure 3). In combination, the development scenario and accompanying assumptions form the basis for the Service's impact evaluation, and provide a means of measuring the accuracy of this basis in the future. Thus, should the development scenario prove unrealistic or one or more assumptions be violated, BLM and the Service must evaluate whether the resulting impacts which are not considered in this BO warrant reinitiation of formal consultation.

This determination is also based on BLM's commitment to consult with respect to all aspects of future oil development, production and abandonment. Additionally, consultation requirements must be met before granting of an exception to a Required Operating Procedure (ROP). This does not mean that separate consultations must be done for each individual development project; several development projects may be covered under a single consultation as long as section 7(a)(2) of the Act is satisfied.

Despite this "no jeopardy" determination, the Service stresses that given the large amount of uncertainty described within the BA surrounding how where development may occur subsequent to leasing, how that development would be managed (Administrative Officer discretion over application of stipulations and ROPs), and how Steller's and spectacled eiders may be affected by development/production, it is difficult to evaluate potential impacts from oil development to these two species. The potential for significant impacts is highest in/adjacent to the northeast portion of the NE Planning Area, because we believe a large proportion of North Slope-breeding spectacled eiders nest within this area (Figure 4). If substantial development, beyond the levels identified in the BA, occurs within/adjacent to areas of high concentration for this species, the potential for significant impacts is high. If development is ultimately authorized in/adjacent to these areas, diligent management will likely be required to protect this threatened species. Because the effects of development on spectacled and Steller's eiders are inadequately studied and understood, we believe that the only certain way to avoid significant impacts is to exclude development from high-density nesting areas.

A chronology of consultation actions regarding the BA is provided in Appendix 1. A complete administrative record of this consultation is on file at the Fairbanks Fish and Wildlife Field Office, 101 12th Ave., Room 110, Fairbanks, Alaska 99701. If you have any

comments or concerns regarding this biological opinion, please contact Ted Swem, Endangered Species Biologist, Fairbanks Fish and Wildlife Field Office at 907/456-0441.

## DESCRIPTION OF THE PROPOSED ACTION

### Background

Section 7(a)(2) of the Endangered Species Act, (16 U.S.C. § 1531 et seq.), requires that each Federal agency shall insure that any action authorized, funded, or carried out by such agency is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of critical habitat of such species. When the action of a Federal agency may adversely affect listed species, that agency (i.e., the "action" agency) is required to consult with either the National Marine Fisheries Service (NMFS) or the U.S. Fish and Wildlife Service (Service), depending upon the protected species that may be affected. For the actions described in this document, the action agency is the BLM. Due to the protected species involved, the consulting agency is the Service. Section 7(b) of the Act requires that the consultation be summarized in a BO detailing how the action may affect protected species. The purpose of this BO is to fulfill the section 7 requirements for consultation on oil activity within the NE Planning Area. Section 7 regulations allow a formal consultation to encompass a number of similar actions within a given geographic area or a segment of a comprehensive plan (50 CFR 402.14). This opinion focuses on the potential effects of oil activity on the threatened Steller's eider (*Polysticta stelleri*) and spectacled eider (*Somateria fischeri*).

If a lease sale were to result from the Amended IAP/EIS, it would be the eighth sale in NPR-A since January 1982. The first two oil and gas lease sales were held in January and May 1982. Two subsequent sales followed in 1983 and 1984, and a fifth lease sale was canceled. In 1998 the BLM consulted with the Service pursuant to a new IAP/EIS for NE Planning Area. The NE Planning Area IAP/EIS was somewhat similar to the current Amended IAP/EIS in that it described potential ground-impacting management actions such as oil and gas exploration and potential development/production activities. In the BO for the 1998 NE Planning Area IAP/EIS, the Service issued incidental take for 25 spectacled eiders and 1 Steller's eider and stated that the action would not result in jeopardy for threatened eiders. Sales covered by the 1998 NE Planning Area IAP/EIS were held in 1999 and 2001. In January 2004, BLM consulted with the Service pursuant to a new IAP/EIS for the NW Planning Area. To date a total of approximately129 wells have been drilled in the NPR-A. Of 688 leases issued in various Federal offshore Beaufort Sea sales adjacent to the NE Planning Area, 52 are still active, and a total of 30 exploration wells have been drilled, plugged and abandoned. Currently, only one offshore production facility is in operation in the Beaufort Sea. Nine offshore wells are considered producible but uneconomic for development and production at current oil prices.

The oil and gas potential of the NE Planning Area is dominated by the "Beaufortian Play" which contains the Alpine Field. A play refers to a group of petroleum deposits (pools) that