DANIEL S. SULLIVAN, Attorney General
STEVE DEVRIES, Assistant Attorney General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
(907) 269-5255 (phone)
(907) 279-8644 (facsimile)
steve.devries@alaska.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| NATIVE VILLAGE OF POINT HOPE, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-00004-RRB |
| | ) | |
| KENNETH L. SALAZAR, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORADUM IN SUPPORT OF STATE OF ALASKA'S
## MOTION FOR LEAVE TO INTERVENE

## I.   INTRODUCTION

The Native Village of Point Hope, et al. ("Plaintiffs"), initiated this action challenging the validity of the environmental analysis underlying the Mineral Management Service's ("MMS") decision to conduct OCS Lease Sale 193. Plaintiffs' claim the decision to authorize OCS Lease Sale 193 together with the Environmental Impact Statement ("EIS") supporting that decision, violate provisions of the Administrative Procedures Act ("APA"), the National Environmental Policy Act ("NEPA") and the Endangered Species Act ("ESA"). As relief, Plaintiffs request both

declaratory and injunctive relief requiring the Federal Defendants comply with NEPA and the ESA. But the Plaintiffs' request for relief goes further. Plaintiffs also seek an order requiring the rescission of all leases issued by the federal government under Lease Sale 193.

Pursuant to Federal Rule of Civil Procedure 24, the State of Alaska ("State") moves to intervene as a party defendant in this case. The State respectfully suggests it should be granted intervention as a matter of right under Fed. R. Civ. Proc. 24(a), but in the alternative requests leave for permissive intervention under Fed. R. Civ. Proc. 24(b). Intervention is necessary to protect the State's interests which cannot be adequately represented by any other party in this proceeding.

This Memorandum is supported by the attached Declaration of Kevin R. Banks (Exhibit A) Also accompanying this motion and lodged with the Court as Exhibit B is the State's Proposed Answer to the Complaint.

## II. POTENTIAL IMPACTS OF THIS CASE ON THE STATE

Plaintiffs' complaint seeks declaratory and injunctive relief, and in addition an order requiring the Federal Defendants to rescind all leases issued under Lease Sale 193. These remedies, if granted, would create substantial adverse impacts on the State.

Alaska is unique among states in its economic dependence on oil and gas development. The oil and gas industry is Alaska's largest non-governmental industry,[1] with an estimated 90% of its unrestricted revenues for 2009 expected to come from oil

---

[1] Alaska Oil & Gas Association, *Straight Talk*, June–July 2008, http://www.aoga.org/newsletter/june_newsletter.pdf.

State of Alaska's Memorandum in Support of Motion to Intervene                    Page 2 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB

and gas development.[2]  Banks Declaration at ¶ 5.  Although proposed OCS leasing and development activities will take place in federal waters, they nonetheless will have important economic impacts for the state.  For example, staging activities likely will take place in Alaska.[3]  If these activities are curtailed, Alaska will be harmed by the loss of property tax revenues, employment, and income to local communities.  Fewer or delayed projects will diminish employment opportunities and the revenue that funds schools, public safety, local governments, and state agencies.

Oil and gas exploration and development in arctic waters off Alaska's coast, both in state and federal waters, is an expensive enterprise relative to similar exploration and development activities in less harsh climates.  Industry bidding on lease tracts in either state or federal waters is typically preceded by substantial expenditures used to generate data necessary for industry to identify lease tracts with hydrocarbon development potential.  If lease rescission is allowed after such investment decisions are made, this will have a chilling effect on industry's willingness to participate in future lease sales off Alaska's coast.  Stated simply, industry investments will be made according to a balance of risk and return.  If lease rescission is permitted, the risk imposed on industry investment in Alaska's OCS becomes greater which will cause oil and gas development investment to go elsewhere where the rewards are greater.  Banks Declaration at ¶ 6.

---

[2]   Alaska Department of Revenue, Revenue Sources Book, December 2008, http://www.tax.alaska.gov/programs/documentviewer/viewer.aspx?1531f.

State of Alaska's Memorandum in Support of Motion to Intervene                    Page 3 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB
Case 1:08-cv-00004-RRB    Document 96    Filed 06/17/09    Page 3 of 18

The State can indirectly benefit from oil and gas development on federal lands, including the OCS. Where successful oil and gas production occurs on federal lands, adjacent state lands with hydrocarbon production potential become more economic to develop given infrastructure investments made to accommodate federal lands production. Any potential development of hydrocarbon bearing state lands adjacent or near to Sale 193 leases become increasingly uneconomic should Sale 193 leases be rescinded. Banks Declaration at ¶ 8.

The State usually has a direct pecuniary interest in federal lease sales because twenty seven percent of the bonuses, rents, and royalties received by the federal government on OCS lands within three-to-six miles of the Alaska three-mile offshore boundary must be shared with Alaska. Although the leases acquired by industry in the Lease Sale 193 area lie outside of the three-to-six mile zone, the impact of rescission in Lease Sale 193 may negatively affect development decisions in other Arctic lease sale areas where the state does enjoy this royalty sharing potential. Banks Declaration at ¶ 9.

Moreover, leasing—and ultimately exploration and development of OCS resources off Alaska's coast—will impact other state taxes and revenues. State royalties and taxes are based on the value of oil taken within Alaska, net of the cost of transportation to market. To the extent any oil discovered in the Chukchi Sea would go to market through the TransAlaska Pipeline System ("TAPS"), it would act to increase throughput in TAPS—or in any other pipeline built to ship OCS oil—that will lower the

---

[3] *See* Declaration of Chandler T. Wilhelm, filed March 12, 2008 in support of Shell's Motion to Intervene at ¶s 4 and 9.

State of Alaska's Memorandum in Support of Motion to Intervene                    Page 4 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB

unit cost for all Alaskan oil. Banks Declaration at ¶ 10. Thus, oil developed in Alaska's OCS will increase state royalties and taxes from oil developed on state lands.

In short, oil and gas development is critical to Alaska. The state funds its government with revenue from oil and gas development and its economy is dependent on oil and gas-related jobs and businesses.

The State's interest in the case is, however, broader than the socio-economic benefits from these particular leases because of the chilling effect lease rescission could have on future industry investment decisions. Alaska's Constitution imposes a duty on the State to responsibly manage Alaska's natural resources for the maximum benefit of its people. Art. VIII, § 1. Plaintiffs' claims interfere with this duty and set a precedent that may adversely impact oil and gas leases and development in the State's offshore resources.

The State is entitled to intervene as of right under Fed. R. Civ. Proc. 24(a)(2), because the State has significant protectable interests in the leases issued under Sale 193 that are not adequately represented by the other parties, as detailed below. Alternatively, the State requests permission to intervene under Fed. R. Civ. Proc. 24(b)(2).

## III. ARGUMENT

### A. The State is Entitled to Intervene as a Matter of Right

The Ninth Circuit liberally construes Rule 24 in favor of applications for intervention: "In determining whether intervention is appropriate, we are guided

State of Alaska's Memorandum in Support of Motion to Intervene          Page 5 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB
Case 1:08-cv-00004-RRB    Document 96    Filed 06/17/09    Page 5 of 18

primarily by practical and equitable considerations. We generally interpret the requirements broadly in favor of intervention."[4]

A four-part test is used to evaluate requests to intervene as a matter of right. The applicant must show: "(1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest."[5]

### 1. The state has significantly protectable interests relating to the property or transaction that is the subject of the action.

To intervene as of right an applicant need not establish standing, or show a particularized injury of the type used to establish standing.[6] The Ninth Circuit instead requires only a "significantly protectable interest," i.e., that the intervenor has an existing right relating to the interests that the plaintiff seeks to enjoin or impair.[7]

If the applicant meets this criterion, it must next establish a relationship between the interest harmed and the claims at issue in the suit. This requirement is

---

[4]     *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1988). *See also Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 819-20 (9th Cir. 2001)(stating a "district court is required to accept as true the non-conclusory allegations made in support of an intervention motion," including statements made in well-supported declarations.)

[5]     *Donnelly v. Glickman*, 159 F.3d at 409.

[6]     *Didrickson v. United States Dept. of the Interior*, 982 F.2d 1332, 1340 (9th Cir. 1992).

[7]     *See Southwest Ctr. for Biological Diversity v. Berg,* 268 F.3d at 819.

State of Alaska's Memorandum in Support of Motion to Intervene                    Page 6 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB
Case 1:08-cv-00004-RRB     Document 96     Filed 06/17/09     Page 6 of 18

satisfied when the relief sought by the plaintiffs "will have direct, immediate, and harmful effects upon a third party's legally protectable interests."[8]

The State meets both criteria. The State has significant protectable interests associated with Sale 193 leases that Plaintiffs seek to have rescinded. And granting Plaintiffs' injunction and request for rescission will have direct and harmful effects upon the State's interests.

The State has at least three inter-related interests threatened by the Plaintiff's action. First, the State has a duty to promote economic development within its borders, including making available economic opportunities to its citizens.[9] If Sale 193 leases are rescinded this will likely act to diminish existing and potential job opportunities for state residents and decrease the revenues the State uses to fund schools, public safety, local governments, the arts, and state agencies.[10]

Second, the State has an interest in maximizing state revenue.[11] Sale 193 lease rescission would likely have a direct and harmful impact on the oil and gas

---

[8]    *Id*. at 818.

[9]    *See* AS 44.33.020(a)(30) – (35).

[10]    *Cf. Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997) (allowing the State of Texas to intervene as a matter of right in a suit for injunctive relief under the Endangered Species Act because Texas had important interest in protecting its sovereign interest over water management; as regulator of water rights; and because of interests in protecting the health and well-being of citizens affected by the suit).

[11]    The Ninth Circuit has held that Arizona and Apache County were entitled to intervention of right at the remedy phase of the case because of their statutory entitlement to a portion of the timber proceeds received from federal timber harvests. *Forest Conservation Council v. United States Forest Service,* 66 F.3d 1489, 1492 &1496 (9th Cir. 1995).

State of Alaska's Memorandum in Support of Motion to Intervene    Page 7 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB
Case 1:08-cv-00004-RRB    Document 96    Filed 06/17/09    Page 7 of 18

industry's willingness to participate in future lease sales off Alaska's OCS. As stated in Mr. Banks Declaration at ¶ 6, "[i]f lease rescission is permitted, the risk imposed on industry investment in Alaska's OCS becomes greater which will cause oil and gas development investment to go elsewhere where the rewards are greater." Because of the oil and gas industry's roll as an employer and revenue generator in the State,[12] any remedy granted which could make industry investment in Alaska unattractive has direct and substantially adverse economic consequences for the State and its citizens.

The state also may suffer indirectly from any order requiring lease rescission. Presumably, any near-term oil and gas development of the OCS in Alaska's Arctic will mean that more oil will flow through the Trans-Alaskan Pipeline System ("TAPS"), or in other pipelines constructed for transport. Generally speaking the per-barrel amount of a pipeline tariff is a function of the volume of oil shipped through the pipeline; the tariff is higher when through-put volume decreases. The higher a pipeline's tariff, the lower the royalty revenue for the State. Also, lower netback values can impact oil and gas development on state lands on the margin. Banks Declaration at ¶ 10.

Third, State resource development would also be a likely casualty of Sale 193 lease rescission. Successful oil and gas production occurring on federal lands generally benefits adjacent state lands with hydrocarbon production potential. These adjacent state lands become more economic to develop given infrastructure investments made to accommodate federal lands production. Any potential development of

---

[12]    Banks Declaration at ¶ 5.

State of Alaska's Memorandum in Support of Motion to Intervene          Page 8 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB

hydrocarbon bearing state lands adjacent or near to Sale 193 leases thus become increasingly uneconomic should Sale 193 leases be rescinded. Banks Declaration at ¶ 8.

Because development of oil and gas on federal lands has direct and indirect impacts on state land development, state constitutional interests are also implicated. The Alaska Constitution provides that "It is the policy of the State to encourage . . . development of its resources by making them available for maximum use consistent with the public interest." Art. 8, sec. 1. The State has a constitutional duty to "provide for the utilization, development, and conservation of all natural resources belonging to the State . . . for the maximum benefit of its people." Art. 8, sec. 2. The Alaska legislature has, in turn, charged the Department of Natural Resources ("DNR") with the responsibility of administering State programs for the conservation and development of natural resources. *See* AS 44.37.020(a). To accomplish this goal, DNR must encourage the development of natural resources to maximize economic and physical recovery. *See* AS 38.05.180(a)(1). Accordingly, the State has an important sovereign interest in ensuring Sale 193 leases are not rescinded because of their collateral impact on state land hydrocarbon development.[13]

In short, rescission of federal leases would constitute a substantial harm to a "significant protectable interest" held by the State.[14] The connection between this interest and the pending claims is sufficiently clear because the federal leases are

---

[13]    Cf. Sierra Club v. City of San Antonio, 115 F.3d at 315.

[14]    *Cf. Southwest Ctr. for Biological Diversity,* 268 F.3d at 820 (holding that a third-party beneficiary's interest constitutes a substantial interest because his rights would be affected if an agreement was invalidated).

State of Alaska's Memorandum in Support of Motion to Intervene                    Page 9 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB
Case 1:08-cv-00004-RRB    Document 96    Filed 06/17/09    Page 9 of 18

threatened.[15]  The blend of the State's interests described above, both individually and cumulatively, satisfy the standard for intervention as of right.

### 2. Absent intervention, disposition of this action may impair or impede the state's ability to protect its interests.

The Ninth Circuit follows the Rule 24 advisory committee note, which provides "'[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'"[16] The State must have the opportunity to fully participate in this case as a party in order to protect its interests against the threat of lease rescission.

The broad relief plaintiffs seek against the Federal Defendants, if granted, will impact the State's varied interests in this lawsuit.  As discussed above, lease rescission would create adverse State impacts on employment, revenue, and state land development, which effects will trickle throughout Alaska's economy.  The State stands to suffer from job losses (both current and future), and from losses of state revenue generated by royalties and income and production taxes from future production.  Lease rescission would also likely chill future exploration and development activities in the Beaufort and Chukchi seas resulting in collateral adverse impacts to Alaska's economy. Intervention of right is essential to allow the State to adequately protect these interests.

---

[15]  *Id.* at 820-821.

[16]  *Southwest Ctr. for Biological Diversity,* 268 F.3d at 822 (quoting Fed.R.Civ.P. 24 advisory committee's notes).

State of Alaska's Memorandum in Support of Motion to Intervene                    Page 10 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB
Case 1:08-cv-00004-RRB    Document 96    Filed 06/17/09    Page 10 of 18

The State also has no other forum to protect its interests. In *Sierra Club v. United States,* 995 F.2d 1478 (9th Cir. 1993), the Ninth Circuit rejected the Sierra Club's assertion the City of Phoenix could protect its interests in subsequent administrative proceedings. The court noted "the relief sought by the Sierra Club would constrain the EPA, which would not then be free to violate the terms of the declaratory and injunctive relief in later administrative proceedings." *Id.* at 1486. The Court also observed the City of Phoenix had no avenue to administratively appeal the constraints that might be placed on EPA's regulatory duties by virtue of an injunction.

There is no other venue, forum or opportunity available for protection of the State's interests. An order for lease rescission would create near and long-term prejudice to the State which would likely not be subject to immediate cure. For these reasons, the Court should recognize the State's right to intervene.

### 3.      The state's motion to intervene is timely.

The Ninth Circuit considers three factors in evaluating the timeliness of a motion to intervene: "(1) the stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and the length of the delay."[17]

Although this case originated in January 2008, it is proceeding on motions for summary judgment. *See* Docket Nos. 87 and 88. At present, Plaintiffs' motion has been filed and answering briefs from the Federal Defendants and Intervenors are

---

[17]      *Orange County v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986).

State of Alaska's Memorandum in Support of Motion to Intervene                    Page 11 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB
Case 1:08-cv-00004-RRB      Document 96      Filed 06/17/09      Page 11 of 18

currently due July 17. *See* Docket No. 94.  Inasmuch as the State seeks to intervene as a party defendant, it has lodged its answer to the Plaintiffs' Second Amended Complaint, and it will comply with the Court ordered briefing schedule, no prejudice is created for any party by the State's request to intervene at this time.

The State did not attempt to intervene in this case earlier because when it was originally initiated, the State had confidence its interests in defending Plaintiffs' claims would be adequately represented by the Federal Defendants, who share a number of the same sovereign interests as the State.  Although the State hopes its interests will continue to be aligned with those of the Federal Defendants, in an abundance of caution, the State must act to ensure its interests are protected until such time that the new federal administration's policy positions are fully articulated.

Because the new administration did not take office until late January, and since Mr. Salazar was not confirmed to his appointment as Secretary of the Interior until much later, the State's intervention request should be deemed timely.

4.      **The state's interests are not adequately represented by the other parties.**

The requirement of inadequacy of representation is satisfied if the State shows that representation of its interests *may* be inadequate.[18]  The burden of showing that existing parties may not adequately represent a party's interests "is not a strenuous

---

[18]      *Southwest Ctr. for Biological Diversity,* 268 F.3d at 822.

State of Alaska's Memorandum in Support of Motion to Intervene                    Page 12 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB
Case 1:08-cv-00004-RRB     Document 96     Filed 06/17/09     Page 12 of 18

test."[19]  It is instead a minimal showing that is required; the applicant for intervention need only show that representation by the present parties *may* be inadequate.[20]

To assess the adequacy of representation the court considers three factors: (1) whether the interests of a present party to the suit are such that it will undoubtedly make all of the intervenor's arguments; (2) whether the present party is able and willing to make such arguments; and (3) whether the intervenor would offer any necessary element to the proceedings that the other parties would neglect.[21]  Any doubt regarding the adequacy of representation should be resolved in favor of the applicant for intervention.[22]

The current defendants include two federal agencies:  MMS (including its Director) and the Fish and Wildlife Service.  The interests of these federal agencies are not identical to those of the State.  Unlike the State, the federal agencies do not have the same economic stake in offshore oil and gas development.  These activities bring jobs and income to Alaskan communities, tax revenue to local and State government, and royalties to the State.  Thus, on the question of injunctive relief and lease rescission, the State may well present a more vigorous opposition to any request for relief than the Federal Defendants might assert, particularly given a change in administration that carries

---

[19]  *League of Wilderness Defenders v. Forsgren*, 184 F. Supp.2d 1958, 1061 (D. Ore. 2002).

[20]  *Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 838 (9th Cir. 1996).

[21]  *Southwest Ctr. for Biological Diversity,* 268 F.3d at 822.

State of Alaska's Memorandum in Support of Motion to Intervene                    Page 13 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB
Case 1:08-cv-00004-RRB    Document 96    Filed 06/17/09    Page 13 of 18

with it a potential for changes in federal policy. Because the Federal Defendants' interests are not identical to the State's, it cannot be assumed the Federal Defendants will any longer advocate in a manner consistent with the State's interests.[23]

For similar reasons, intervenors ConocoPhillips and Shell cannot be expected to adequately represent the State's interests. Neither intervenor is a sovereign; they are presumably adverse to the State's interests in revenue generation because they are some of the ultimate payees; they have no duty to seek to ensure local communities needs are met or that schools and public safety are adequately funded. Although these intervenors share a goal of avoiding lease rescission with the State, the reasons for sharing this goal are highly divergent. This lack of symmetry makes these intervenors inadequate candidates to represent the State's sovereign interests.[24]

The second question is whether the Federal Defendants and intervenors are "able and willing" to make the arguments that the State would make.[25] In the accompanying declaration, Mr. Banks illustrates some of the State's interests that are unique to the State. No other party would have standing to raise these interests as a

---

[22]    *See* 6 Moore's Federal Practice, §24.03[4][a][i] at 24-47 (3rd Ed. 1997), *citing Federal Sav. & Loan Insurance Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

[23]    *Cf. Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995)(Observing the federal government's interests are not aligned with state or local interests).

[24]    *See, id.* ("[T]he government must present the broad public interest, not just the economic concerns of the timber industry.")

[25]    *Southwest Ctr. for Biological Diversity,* 268 F.3d at 822.

State of Alaska's Memorandum in Support of Motion to Intervene                    Page 14 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB

defense to the equitable relief Plaintiffs' request. And the "willingness" of the Federal Defendants to make the State's arguments is speculative at this stage of the lawsuit.

The third question is whether the State would offer any necessary element to the proceeding that the other parties would neglect. *Id.* The State has unique interests in this case, socio-economic interests balanced against environmental management interests derived from the Alaska Constitution. These interests may run parallel to some degree with those of the Federal Defendants, or to intervenors Shell and ConocoPhillips, but they remain unique nonetheless. No other party could bring to this lawsuit the State's perspective in seeking to establish and preserve a stable leasing framework within which OCS development can proceed in Alaska. No other party shares the State's role. The Court should recognize the value of the State's perspective and participation in this suit.

**B.      In the Alternative to Intervention of Right, the State Should Be Allowed Permissive Intervention.**

The State believes it is entitled to intervene in this case as of right. However, should the Court determine otherwise, the State should be permitted to intervene under Fed. R. Civ. P. 24(b)(2):

> Upon timely application anyone may be permitted to intervene in an action…when an applicant's claim or defense and the main action have a question of law or fact in common…. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

As argued above, the State's Motion to Intervene should be deemed timely. And the State, by virtue of its statutory and constitutional responsibilities described above, holds claims and defenses in common with questions of law and fact raised by

State of Alaska's Memorandum in Support of Motion to Intervene                                                 Page 15 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB

Plaintiffs' complaint. The State has a large stake in ensuring Sale 193 lease rescission is avoided and it should be entitled an opportunity to be heard regarding the merits of Plaintiffs' claims and the remedies sought. The State's participation will "contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."[26]

In *Nuesse v. Camp*, 385 F2d. 694, the D.C. Circuit Court reversed the District Court's denial of permissive intervention to the State of Wisconsin in a suit involving both federal and state banking laws. The Court recognized the "intimacy of the relationship between and interdependency of the Federal and State statutes" involved. *Id.* at 705. The Court went on to emphasize that when an intervenor-applicant is a public official, courts should apply the rule liberally:

> It is a living tenet of our society and not mere rhetoric that a public office is a public trust. While a public official may not intrude in a purely private controversy, permissive intervention is available when sought because an aspect of the public interest with which he is officially concerned is involved in the litigation.

*Id.* at 706.

Allowing the State to intervene at this stage of the case will not unduly delay or prejudice the rights of any parties. The Federal Defendants and Intervenors have not submitted responsive briefs on summary judgment. The case will be able to proceed on its existing schedule, with the State's participation and unique perspective. The State's intervention will also benefit the Court in considering the public interests at stake

---

[26] *U.S. Postal Service v. Brennan*, 579 F.2d 188, 192 (9th Cir. 1978); *accord, Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002).

State of Alaska's Memorandum in Support of Motion to Intervene                    Page 16 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB
Case 1:08-cv-00004-RRB    Document 96    Filed 06/17/09    Page 16 of 18

and balancing the hardships of the injunctive relief and other equitable relief, if such relief is ultimately considered. *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 541-546 (1987).

## III.    CONCLUSION

For the reasons set forth above, the State respectfully requests that the Court recognize the State's right to intervene in this matter, or, in the alternative, grant the State permission to intervene, for all matters, including proceedings on the merits of plaintiffs' claims.  A proposed Order to that effect is hereby lodged with this Motion.

If the Court denies the State intervention as of right or by permission, the State respectfully requests that it be given leave to participate as an *amicus*.[27]

Dated this 17th day of June, 2009, at Anchorage, Alaska.

DANIEL S. SULLIVAN
ATTORNEY GENERAL

By:    /s/Steve DeVries
Steve DeVries
Senior Assistant Attorney General
Alaska Bar No. 8611105

---

[27]     *See Forest Conservation Council, supra*, 66 F.3d at 1493; *Southwest Center for Biological Diversity v. U.S. Forest Service*, 82 F. Supp. 1070, 1072-73 (D. Arizona 2000).

State of Alaska's Memorandum in Support of Motion to Intervene                    Page 17 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB
Case 1:08-cv-00004-RRB    Document 96    Filed 06/17/09    Page 17 of 18

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 17, 2009, a copy of the foregoing was served electronically on the parties of this case.

/s/Steve DeVries
Steve DeVries
Senior Assistant Attorney General
Alaska Bar No. 8611105

State of Alaska's Memorandum in Support of Motion to Intervene     Page 18 of 18
*Native Village of Point Hope, et al. v. Salazar, et. al.*
Case No. 1:08-CV-00004-RRB
Case 1:08-cv-00004-RRB    Document 96    Filed 06/17/09    Page 18 of 18