IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

NATIVE VILLAGE OF POINT HOPE,
<u>et</u> <u>al.</u>,

      Plaintiffs,

vs.

KENNETH L. SALAZAR, <u>et</u> <u>al.</u>,

      Defendants.

Case No. 1:08-cv-0004-RRB

**<u>ORDER REMANDING TO AGENCY</u>**

I.   **MOTIONS PRESENTED**

Plaintiffs have filed a Complaint for Declaratory and
Injunctive Relief challenging Defendants' decision to offer
approximately 29.4 million acres of public lands on the outer
continental shelf of the Chukchi Sea for oil and gas leasing.[1]
Plaintiffs allege that the decision, together with the Chukchi Sea
Planning Area Oil and Gas Lease Sale 193 and Seismic Surveying
Activities in the Chukchi Sea Final Environmental Impact Statement
(FEIS), violates the National Environmental Policy Act (NEPA), the

---

[1]    Second Amended Complaint, Docket 58.

ORDER REMANDING TO AGENCY - 1
1:08-CV-0004-RRB

Endangered Species Act (ESA), and the Administrative Procedure Act (APA).[2]

Specifically, Plaintiffs allege that the FEIS:

1.    does not adequately analyze and present the impacts of Lease Sale 193 on the environment and human communities;

2.    fails to include essential missing information about the Chukchi Sea and the potential impacts of the lease sale, or explain why excluding this information is justified;

3.    fails to adequately analyze the impact of the lease sale in the context of a warming climate;

4.    understates the potential impacts of oil and gas development pursuant to the leases by analyzing a limited development scenario;

5.    understates the risks of an oil spill;

6.    fails to fully analyze the cumulative impacts to threatened eiders of the lease sale and other oil and gas development in threatened eiders' Arctic habitat; and

---

[2]    *Id.*  In light of a new biological opinion issued since the filing of the Complaint in this case, the parties agree that the ESA claims are moot and should be dismissed.  Docket 122 at 30; Docket 134 at 26.  Accordingly, the Court will not address the ESA arguments.

Case 1:08-cv-00004-RRB   Document 136   Filed 07/21/10   Page 2 of 21

7.    provides a misleading analysis of the effects of seismic surveying.[3]

Defendants suggest that the result of their due diligence, review of the best available scientific information, and extensive public process was a three-volume Final EIS comprising over 1,800 pages of analysis, tables, figures, and responses to comments. This EIS was preceded by decades of prior seismic and exploration activity, which included extensive public comment, participation, and analysis of existing scientific data.[4] They say Sale 193 EIS not only incorporates information from the two EIS's prepared in connection with MMS's five-year leasing plans, it also incorporates two Biological Opinions issued by the National Marine Fisheries Service and the Fish and Wildlife Service on the bowhead whale, the spectacled eider, the Steller's eider, and the Ledyard Bay Critical Habitat Unit designated for spectacled eiders, and updated information from the 2006 Programmatic Environmental Assessment for Seismic Activities in the Beaufort and Chukchi Seas. The Sale 193 EIS contains a nearly 300-page discussion of the impacts of the "Proposed Action" and a 76-page analysis of potential cumulative effects. Defendants argue that the EIS includes a detailed

_____

[3]      *Id.*

[4]      Docket 126 at 13.

ORDER REMANDING TO AGENCY - 3
1:08-CV-0004-RRB

environmental review of each of the areas Plaintiffs allege is deficient – missing baseline information about resources and impacts, the development scenario, climate change, seismic activity, and endangered and threatened species.[5]

Oral argument has not been requested. Inasmuch as the Court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it concludes oral argument is neither necessary nor warranted with regard to the instant matter.[6]

## II. BACKGROUND

### A. National Environmental Policy Act - NEPA

NEPA mandates the preparation of an Environmental Impact Statement ("EIS") for any major federal action "significantly affecting the quality of the human environment."[7] The twin objectives of NEPA are to (1) require the federal agency to "consider every significant aspect of the environmental impact of a proposed action," and (2) ensure that the agency "inform[s] the

---

[5]    Docket 126 at 14.

[6]    *See Mahon v. Credit Bureau of Placer County Inc.,* 171 F.3d 1197, 1200 (9th Cir.1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

[7]    42 U.S.C. § 4332(C).

public that it has indeed considered environmental concerns in its decisionmaking process." NEPA aims to "promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man . . . ."[8] An injunction that prevents harmful activities undoubtedly furthers these purposes and thereby protects the public interest, but the development of the state's natural resources is a competing public interest to consider.

## B. Outer Continental Shelf Leasing Act - OCSLA

OCSLA's fundamental objective is the "expeditious and orderly" development of the Outer Continental Shelf's energy reserves, subject to appropriate environmental safeguards.[9] To achieve balance between energy development and environmental protection, OCSLA establishes four stages of offshore development: (1) a five-year lease plan; (2) lease sales; (3) exploration; and (4) development and production. The statute and implementing regulations assign each phase its own environmental review requirements.[10] This case involves stage two of the OCSLA.

---

[8] 42 U.S.C. § 4321.

[9] 43 U.S.C. § 1332(3).

[10] See, e.g., *Sec'y of the Interior v. California*, 464 U.S. 312, 337 (1984); *Tribal Village of Akutan v. Hodel*, 869 F.2d 1185, 1192 (9th Cir. 1988) ("the amount and specificity of information necessary to meet NEPA requirements varies at each of OCSLA's

### C.  The Parties

Plaintiffs include more than a dozen environmental groups and local tribal governments.  Defendant Dirk Kempthorne (now Kenneth L. Salazar) is sued in his official capacity as Secretary of the Department of the Interior.  Defendant Randall B. Luthi is sued in his official capacity as Director of the Minerals Management Service ("MMS").  Defendant Minerals Management Service is an agency of the United States Department of the Interior entrusted with management of the mineral resources of the Chukchi Sea outer continental shelf.  Defendant United States Fish and Wildlife Service is an agency of the United States Department of the Interior charged with implementing the ESA.

Plaintiffs oppose oil and gas exploration and development along Alaska's outer continental shelf and disagree with MMS's decision to pursue further leasing within that area, under OCSLA. MMS has a statutory duty to balance environmental protection with the expeditious and orderly development of our nation's energy resources along the outer continental shelf.

---

stages"); *Village of False Pass v. Clark*, 733 F.2d 605, 616 (9th Cir. 1984)("staged development encourages staged consideration of uncertain environmental factors").

## III. STANDARD OF REVIEW

Judicial review of administrative actions under NEPA is governed by the Administrative Procedure Act ("APA").[11] Under the APA, the Court must determine whether the agency action was "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law,"[12] or "without observance of procedure required by law. . . ."[13] When considering whether the action was arbitrary and capricious or an abuse of discretion, "we must ensure that the agency has taken a 'hard look' at the environmental consequences of its proposed action."[14] However, "[t]he standard is narrow and the reviewing court may not substitute its judgment for that of the agency."[15]

An agency decision is arbitrary and capricious if the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter

---

[11]   5 U.S.C. §§ 701-706.

[12]   5 U.S.C. § 706(2)(A).

[13]   5 U.S.C. § 706(2)(D).

[14]   *Blue Mountains Biodiversity Project*, 161 F.3d at 1211.

[15]   *Envtl. Def. Ctr. v. EPA*, 344 F.3d 832, 858 n.36 (9th Cir. 2003) (citing *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989)).

to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."[16]

As long as the agency "has considered the relevant factors and articulated a rational connection between the facts found and the choice made," a court must uphold the administrative action.[17] Deference is especially appropriate when reviewing the agency's technical analysis and judgments involving the evaluation of complex scientific data within the agency's technical expertise.[18] Deference must be given to the experience and expertise of the agency in light of the Supreme Court's instruction that the Court is not to substitute its own judgment for that of the agency.[19] Furthermore, the purpose of NEPA is to ensure that environmental considerations are taken into account, but not necessarily elevated

---

[16]     *Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

[17]     *Baltimore Gas & Elec. Co.*, 462 U.S. at 105.

[18]     *Oregon Natural Resources Council Fund v. Brong*, 492 F.3d 1120, 1135 (9th Cir. 2007).

[19]     *Envtl. Def. Ctr. v. EPA*, 344 F.3d 832, 858 n.36 (9th Cir. 2003) (citing *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989)).

over other appropriate considerations.[20]  In the context of reviewing an EIS, the Ninth Circuit has explained:

> The adequacy of an EIS depends upon whether it was prepared in observance of the procedure required by law. . . . Under this standard of review, we employ a "rule of reason" that inquires whether an EIS contains a reasonably thorough discussion of the significant aspects of the probable environmental consequences. . . . This standard is not susceptible to refined calibration. It instead requires a reviewing court to make a pragmatic judgment whether the EIS's form, content and preparation foster both informed decision-making and informed public participation. . . . This standard of review, however, does not authorize a reviewing court to substitute its judgment for that of the agency concerning the wisdom or prudence of a proposed action. Once satisfied that a proposing agency has taken a "hard look" at a decision's environmental consequences, the review is at an end.[21]

Finally, where "a court reviews an agency action involv[ing] primarily issues of fact, and where analysis of the relevant documents requires a high level of technical expertise, [the court] must defer to the informed discretion of the responsible federal agencies."[22]

## IV.  DISCUSSION

NEPA review occurs at each stage of the four-stage process, but MMS issues "more detailed environmental impact statements at

---

[20]  *Baltimore Gas & Elec. Co.,* 462 U.S. at 97.

[21]  *California v. Block*, 690 F.2d 753, 761 (9th Cir. 1982)(internal citations and quotations omitted).

[22]  *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1206 (9th cir. 2004).

the program's later, more site-specific stage."[23] Defendants argue that Plaintiffs' claims under 40 C.F.R. § 1502.22 must be considered exclusively in the context in which this case arises – i.e., in the second stage of the OCS Lands Act's four-stage process for oil and gas leasing. During the second stage, leases are issued by MMS, but "the purchase of a lease entails no right to proceed with full exploration, development, or production."[24] Rather, "the lessee acquires only a priority in submitting plans to conduct those activities. If these plans, when ultimately submitted, are disapproved, no further exploration or development is permitted."[25]

Defendants argue that Plaintiffs want the same degree of review applicable at a later phase applied at the lease sale phase, which fails to account for the distinct nature of a lease sale. It is the promise of more accurate information and further review at each subsequent stage, Defendants argue, that makes a more limited review at the lease sale stage appropriate. Plaintiffs would have the Department of Interior wait for more information before

---

[23] *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 474 (D.C. Cir. 2009).

[24] *Sec'y of Interior v. California*, 464 U.S. 312, 339 (1984).

[25] *Id.*

approving the lease sale, but Defendants argue that the lease sale itself is a catalyst for gathering information.

The Ninth Circuit has previously ruled in the oil and gas leasing context, at the initial leasing stage, NEPA does not require MMS to prepare an EIS that evaluates potential environmental effects on a site-specific level of detail.[26] The Ninth Circuit found that, while plaintiffs had "legitimate concerns about the uncertainty at this stage of gauging the adverse effects that future development may have on this environment," such concerns were "inherent in any program for the development of natural resources."[27] The Court explained that "[t]his is because such projects generally entail separate stages of leasing, exploration and development. At the earliest stage, the leasing stage we have before us, there is no way of knowing what plans for development, if any, may eventually materialize."[28] Intervenor-Defendant ConocoPhillips Company notes that as expected in a remote, frontier area, MMS has estimated the probability that Lease

---

[26]     *Northern Alaska Environmental Center v. Kempthorne*, 457 F.3d 969, 977 (9th Cir. 2006).

[27]     *Id.* at 976-77.

[28]     *Id.* at 977.

Case 1:08-cv-00004-RRB   Document 136   Filed 07/21/10   Page 11 of 21

Sale 193 will result in a commercial discovery leading to development and production is less than 10%.[29]

Plaintiffs argue that the EIS understates the potential impacts of development from the lease sale.[30]  They also argue that MMS's NEPA obligation at the lease sale stage is to analyze the effects of development, "should it occur."  The likelihood that commercial discovery leading to development and production is less than 10% is therefore, irrelevant.[31]  Plaintiffs further note that once leases are issued, significant rights are transferred to the lessee, and a lessee may immediately conduct preliminary industrial activities without further MMS approval, including certain types of seismic surveying and drilling.[32]  The government can suspend or cancel leases, but only after making findings about the potential for harm to the environment, and potentially subjecting itself to substantial liability to the lessees.[33]

It is against this backdrop that the Court considers Plaintiffs' complaints.

––––––––––––––

[29]     Docket 124 at 8.

[30]     Docket 134 at 13.

[31]     Docket 134 at 16.

[32]     Docket 134 at 5, citing 30 C.F.R. § 250.207–.210.

[33]     *Id.* at 6, citing 43 U.S.C. § 1334(a)(2)(C).

ORDER REMANDING TO AGENCY - 12
1:08-CV-0004-RRB

**A.  Seismic Surveying and Threatened Eiders**

Plaintiffs allege that MMS failed to take a hard look at the effects of seismic surveying, and failed to fully analyze cumulative effects to threatened eiders.[34] Specifically, Plaintiffs argue that the EIS's discussion of the effects of seismic surveying violated NEPA because, even though it bases its conclusions on successful mitigation measures, it (1) fails to disclose and analyze data from 2006 reports that call into doubt the efficacy of mitigation measures designed to prevent injury to marine mammals from loud noise; and (2) fails to disclose scientific debate about whether broader exclusion zones are needed to protect bowhead cows and calves from disturbance impacts and avoid resulting significant effects to the bowhead population.[35]  The government acknowledges that the EIS did not analyze these questions, but justifies the failure by arguing that future permits will impose mitigation measures that will avoid impacts to marine mammals.  Plaintiffs suggest this is contrary to what the law requires.  In light of

---

[34]     Docket 134 at 17-26.

[35]     Plaintiffs suggest that serious concerns about protecting bowhead cows and calves from exposure to sounds over 120 decibels in the Chukchi Sea were raised during the lease sale process, including by MMS's own scientists.  The EIS failed to address these concerns.  Docket 134 at 21.

these omissions, Plaintiffs argue the EIS does not meet NEPA's requirements.

**The Court finds that the record reflects a "hard look" in these areas, acknowledging that necessary mitigation measures can be implemented in stages 3 and 4.** To conclude otherwise would require the Court to engage in multiple levels of speculation, which is expressly forbidden under the applicable standard of review, which "is narrow and the reviewing court may not substitute its judgment for that of the agency."[36]

**B. Oil and Gas Development**

Plaintiffs complain that the EIS omits analysis of natural gas development despite industry interest and specific lease incentives for such development, and it analyzes only the development of the first field of one billion barrels of oil, despite acknowledging that this is the minimum level of development that could occur on the leases.[37] Plaintiffs suggest that the government's justification regarding the omission of natural gas development in the EIS (i.e. that there is presently no infrastructure to bring natural gas to market) is unpersuasive. The leases allow the development of

---

[36]     *Envtl. Def. Ctr. v. EPA*, 344 F.3d 832, 858 n.36 (9th Cir. 2003) (citing *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989)).

[37]     Docket 134 at 13.

natural gas, notwithstanding the current lack of infrastructure. Plaintiffs suggest the guiding assumption underlying the development is that the size of the resources discovered will justify the construction of an infrastructure to bring the resource to market.[38]   The Defendants do not dispute that the leases include incentives for natural gas development.

**The Court finds that the EIS analysis of "only" the first billion gallons of oil satisfies the "hard look" requirement at this stage.  However, the Court agrees with Plaintiffs that the inclusion of incentives for natural gas production, without addressing the impact of natural gas exploration, is arbitrary, because it "entirely failed to consider an important aspect" of the lease sale.**[39]   The agency cannot have taken a "hard look" at the impact of natural gas exploration if natural gas development is omitted entirely from the EIS.

### C.  Incomplete or Unavailable Information

NEPA's regulatory requirements impose specific obligations on agencies faced with incomplete or unavailable information.

> When an agency is evaluating reasonably foreseeable significant adverse effects on the human environment in

---

[38]     Docket 134 at 15.

[39]     *Pac. Coast Fed'n of Fishermen's Ass'ns,* 265 F.3d at 1034.

an environmental impact statement and there is incomplete
or unavailable information, **the agency shall always make
clear that such information is lacking.**

(a) If the incomplete information **relevant** to reasonably
foreseeable significant adverse impacts is **essential** to
a reasoned choice among alternatives and the overall
costs of obtaining it are **not exorbitant**, the agency
**shall** include the information in the environmental impact
statement.

(b) If the information relevant to reasonably foreseeable
significant adverse impacts cannot be obtained because
the overall costs of obtaining it are exorbitant or the
means to obtain it are not known, the agency shall
include within the environmental impact statement:

(1) A statement that such information is incomplete or
unavailable;
(2) a statement of the relevance of the incomplete or
unavailable information to evaluating reasonably
foreseeable significant adverse impacts on the human
environment;
(3) a summary of existing credible scientific evidence
which is relevant to evaluating the reasonably
foreseeable significant adverse impacts on the human
environment, and
(4) the agency's evaluation of such impacts based upon
theoretical approaches or research methods generally
accepted in the scientific community. For the purposes of
this section, "reasonably foreseeable" includes impacts
which have catastrophic consequences, even if their
probability of occurrence is low, provided that the
analysis of the impacts is supported by credible
scientific evidence, is not based on pure conjecture, and
is within the rule of reason.[40]

In support of their claim that the EIS suffers from missing

information and data gaps, Plaintiffs have provided an exhibit with

---

[40]     40 C.F.R. § 1502.22 (emphasis added).

their Opening Brief ("Exhibit 129").[41]  Exhibit 129 is a compendium of statements made in the EIS for Lease Sale 193.  Many of the statements acknowledge missing information about the Chukchi Sea environment and the potential effects of the lease sale on wildlife and subsistence.  The exhibit reflects dozens if not hundreds of entries indicating a lack of information about species/habitat, as well as a lack of information about effects of various activities on many species.

Plaintiffs argue that MMS failed to determine whether missing information was relevant or essential under 40 C.F.R. § 1502.22, and failed to determine whether the cost of obtaining the missing information was exorbitant, or the means of doing so unknown.[42]  Plaintiffs argue that MMS's failure to do so violates Section 1502.22 and is arbitrary.[43]  Having failed to make these determinations under § 1502.22, Plaintiffs argue that Defendants' arguments (on brief) that the missing information was not relevant or essential for the lease sale decision is a post-hoc

_____

[41]     The Court is not persuaded by Defendants' arguments that Exhibit 129 should be ignored because it somehow exceeds the briefing page limits.  Plaintiffs have provided the exhibit for the convenience of the Court as an alternative to a string of citations.  Docket 134, fn. 1.

[42]     Docket 134 at 2.

[43]     *Id.* at 4.

justification that cannot be credited.[44] Plaintiffs request that the Court dismiss the argument out of hand and remand to the agency to evaluate, as NEPA requires, the importance of the missing information.[45]

Defendants argue that *Plaintiffs* have the burden to demonstrate that the information they claim is missing meets both the "relevant" and "essential" prongs of § 1502.22, and that Plaintiffs have failed to meet this burden.[46] The Court finds, however, that this conflicts with the plain language of §1502.22, which requires the agency to make the findings. Furthermore, "It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself," rather than on post-hoc rationalization by its lawyers.[47] **The Court finds that MMS's failure to follow § 1502.22 was arbitrary and warrants remand.**

---

[44]   *Id.*

[45]   *Id.* at 5.

[46]   Docket 124 at 11; See *Trout Unlimited v. U.S. Dep't of Agric.*, 320 F. Supp. 2d 1090, 1111 (D. Colo. 2004) (plaintiffs failed to demonstrate that agency did not comply with § 1502.22).

[47]   *Oregon Natural Desert Ass'n. V. Bureau of Land Mgmt.*, 531 F.3d 1114, 1141 (9th Cir. 2008)(citations omitted).

Case 1:08-cv-00004-RRB   Document 136   Filed 07/21/10   Page 18 of 21

**D.    Remedy**

Plaintiffs assert, and Defendants do not dispute, that the normal remedy under the Administrative Procedure Act for unlawful agency action is to set aside the agency's action and remand to the agency.[48] Plaintiffs note that in closely related circumstances, the D.C. Circuit Court of Appeals issued an opinion vacating the 2007-2012 Five Year Oil and Gas Leasing Program, under which MMS conducted the lease sale at issue in this case, because of MMS's failure to do an adequate environmental review.[49] Plaintiffs seek the same relief here, requesting that the Court vacate the lease sale decision and remand to the Agency to satisfy its obligations under NEPA. In the alternative, Plaintiffs seek an injunction prohibiting further activity under the leases pending completion of the Agency's NEPA obligations.[50] Defendants/Intervenors request the opportunity to submit further briefing on the issue, should Plaintiffs prevail. The Court finds that further briefing is unnecessary.

---

[48]    *See* Docket 134 at 26.

[49]    *See Ctr. For Biological Diversity v. U.S. Dep't of the Interior*, 563 F.3d 466, 489 (D.C. Cir. 2009).

[50]    Docket 134 at 28.

ORDER REMANDING TO AGENCY - 19
1:08-CV-0004-RRB

## V. CONCLUSION

The Court finds that, although much of the Agency's extensive investigation was appropriate, the Agency has failed to comply with NEPA in certain circumstances. The Court's only role is to determine if the agency action was "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." In this case, the record reflects that the Agency: (1) failed to analyze the environmental impact of natural gas development, despite industry interest and specific lease incentives for such development; (2) failed to determine whether missing information identified by the agency was relevant or essential under 40 C.F.R. § 1502.22; and (3) failed to determine whether the cost of obtaining the missing information was exorbitant, or the means of doing so unknown. The Court finds the Agency's failure to comply with the clear instructions of §1502.22 was an abuse of discretion. This does not necessarily require the Agency to completely redo the permitting process, but merely to address the three concerns addressed above. In all other respects the Court finds Defendants have complied with NEPA.

In light of the foregoing, Plaintiffs' Motion for Summary Judgment at **Docket 82** is **GRANTED IN PART**, the Cross-Motion for Summary Judgment at **Docket 122** is **DENIED IN PART**. All activity under Lease Sale 193 is hereby enjoined pending review by

Defendants of these issues, and reaffirmation by Defendants of the Lease Sale.  This matter is **REMANDED** to the Agency to satisfy its obligations under NEPA in accordance with this opinion.

   **IT IS SO ORDERED**.

   ENTERED this 21st day of July, 2010.

                              S/RALPH R. BEISTLINE
                              UNITED STATES DISTRICT JUDGE